**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bank of America Group Benefits Program Fiduciary, The Bank of America Benefits Appeals Committee; Bank of America, N.A., <br><br> Plaintiffs, <br><br> vs. <br><br> Carol Riggs, <br><br> Defendant. | No. CV06-02805-PHX-NVW <br><br> **ORDER** |

Pending before the court are Defendant Riggs' Motion to Dismiss for lack of subject matter jurisdiction (Doc. # 7) and Plaintiff's Motion to Reconsider (Doc. # 18). The motion to dismiss was denied in an order dated March 29, 2007 (Doc. # 14), on the ground that while federal subject matter jurisdiction is absent, the amount in controversy between the diverse parties is sufficient under 28 U.S.C. § 1332(a). For the reasons stated below, the motion to dismiss will now be granted, and the motion for reconsideration will be denied.

**I.     Diversity Jurisdiction**

After denying the motion to dismiss, the court ordered additional briefing pertaining to the question of diversity jurisdiction in light of the rule that "future potential benefits may not be taken into consideration in the computation of the amount in controversy in diversity actions . . . involving disability insurance where the controversy concerns merely the extent of the insurer's obligation with respect to disability benefits and not the validity of the

policy." *Mass. Cas. Ins. Co. v. Harmon*, 88 F.3d 415, 416-17 (6th Cir. 1996). Defendant responds that the rule expressed in *Harmon* divests the court of diversity jurisdiction for lack of a sufficient amount in controversy. Plaintiff contends that the jurisdictional amount has been satisfied because the dispute about whether Defendant is entitled to health care coverage available to "active employees" amounts to an attack on the validity of the policy provision that limits Defendant's eligibility exclusively to participation in medical plans with coverage supplemental to Medicare, and future benefits may be considered in calculating the amount in controversy under 28 U.S.C. § 1332(a) when the validity of a policy provision is at issue.

The underlying substantive question in this case is whether a settlement agreement guarantees Riggs a higher level of health care coverage than that provided under her former employer's ERISA Plan.[1] Only the extent of Plaintiff's liability for Riggs's future health care costs is at issue; there is no dispute over liability for costs already incurred. However, the amount in controversy could still exceed $75,000 if one multiplies the average number of years remaining in the life span of a person in Riggs's position by the average annual difference in value between primary coverage under the Plan and coverage that is merely supplemental to Medicare. Depending on which party's interpretation of the Plan and Settlement Agreement is correct, and assuming that Riggs's health care costs will follow national averages, Plaintiff may or may not be required to pay an additional $12,000 in annual medical expenses over the course of roughly 24 years, or a total of $288,000.[2] Diversity jurisdiction thus hinges in part on whether the rule expressed in *Harmon* bars

---

[1] There was some confusion concerning this issue on the part of the court at oral argument. For the sake of clarification only, and without any judgment as to the merits of the case, the court points out that the settlement agreement does state that Riggs's coverage "will be billed at the active employee rate." Doc. # 8 at 4. It is therefore possible from the settlement agreement alone, and without reference to course of performance, that Riggs is entitled to health care coverage as if she were an active employee.

[2] Plaintiff bases these figures on Data Book: Healthcare Spending and the Medicare Program, Section 2, Medicare Beneficiary Demographics 21 (MedPAC June 2006).

- 2 -

consideration of the $288,000 under 28 U.S.C. 1332(a) on the facts of this case. If the rule does have that effect, it will appear to a "legal certainty" that the amount in controversy is insufficient to sustain diversity jurisdiction because no other benefits are in dispute.

Applied here, *Harmon*'s statement of the rule pertaining to future potential benefits is analytically unsatisfying. A dispute over the validity of a policy does not logically call into question future potential benefits any more than a mere dispute over the extent of coverage under a valid policy. In either case, the direct effect of a decision on the merits is to require or deny the future disbursement of those benefits that are implicated by the plan or plan provision that was in dispute. The only difference is the extent of the future benefits that are affected.

As an illustration, it is hard to see how a dispute over the validity of an insurance policy that entitles a beneficiary to $100,000 in future benefits calls such benefits into question any more than a dispute about whether the same policy, admittedly valid, entitles the beneficiary to $180,000 in future benefits instead of $100,000. Just as a decision in the first scenario would directly decide entitlement to a future $100,000, a decision in the second would directly determine whether the beneficiary is entitled to a future $80,000. The future disbursement of the $80,000 is admittedly factually contingent, but it is questionable that it is any more attenuated, contingent, or collateral than the future $100,000 that would be counted in the first scenario under *Harmon*. For the same reason, it is also unsatisfying to rule that future benefits may only factor into the amount in controversy when the validity of an entire policy, as opposed to the validity of a mere provision in the policy, is at issue.

The court nevertheless feels compelled to follow the considered dictum of the Ninth Circuit, which corresponds with the rule articulated in *Harmon*. In *Budget Rent-a-Car, Inc. v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997), it was explained that an insurer's maximum liability was "relevant to determine the amount in controversy only if the validity of the entire insurance policy is at issue." While *Higashiguchi* is factually distinguishable from the present case, the cited language suggests that future benefits should not be

- 3 -

1  considered in calculating the amount in controversy in this case because the validity of only
2  one provision in the Plan, rather than the Plan itself, is at issue.

3        Moreover, the rule in *Harmon* typically applies in the context of disputes involving
4  installment contracts. *See* 14B Charles Allen Wright, Arthur R. Miller & Edward H. Cooper,
5  *Federal Practice And Procedure* § 3710 (3d ed. 1998). The contract presently at issue
6  simply provides coverage for the cost of health care. Payments are made neither in fixed
7  intervals nor at fixed levels. This difference is significant because without a fixed benefit
8  level and rate it is impossible to discern the precise value of Riggs's future potential benefits.
9  Health care costs can fluctuate from year to year, and there is no necessary reason to believe
10 that Riggs's costs would follow national averages.

11       *Hawkins v. Aid Assoc. for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003), which
12 counted future benefits when the validity of an isolated arbitration clause in a policy was
13 disputed, does not warrant a different result. The majority of cases express that the validity
14 of the entire policy must be at issue for future potential benefits to count toward the amount
15 in controversy. Additionally, the approach in *Hawkins* would create uncertainty by resting
16 jurisdiction on the often slippery distinction between disputes over the scope of coverage and
17 disputes over the validity of an isolated provision of a plan that determines the scope of
18 coverage. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 321
19 (2005) (Thomas, J., concurring) ("Jurisdictional rules should be clear."). For these reasons,
20 jurisdiction may not be exercised under 28 U.S.C. § 1332(a). The amount in controversy is
21 insufficient.

22 **II.    Subject Matter Jurisdiction**

23       Plaintiff's motion for reconsideration argues that subject matter jurisdiction exists
24 pursuant to 29 U.S.C. 1332(a)(3)(B)(ii). The statute provides, "A civil action may be
25 brought . . . by a participant, beneficiary, or fiduciary . . . to obtain . . . appropriate equitable
26 relief . . . to enforce any provisions of this subchapter or the terms of the [ERISA] plan." In
27 part, the language of the statute has been satisfied. Plaintiff is an ERISA fiduciary.
28 Moreover, the request for a declaratory judgment can be seen as an action to "enforce" the

- 4 -

1 terms of the ERISA Plan because it aims to establish the primacy of the language of the Plan
2 over the conflicting language of the Settlement Agreement. *Transamerica Occidental Life*
3 *Ins. Co. v. DiGregorio*, 811 F.2d 1249, 1252 (9th Cir. 1987) ("A declaratory judgment may
4 be said to 'enforce' ERISA or the terms of an ERISA plan where it seeks to establish the
5 primacy of an ERISA obligation over some independent, potentially conflicting federal or
6 state law duty.").

7 The remaining question concerning the applicability of section 1332(a)(3)(B)(ii) is
8 whether Plaintiff is seeking to enforce the terms of the Plan by means of "appropriate
9 equitable relief." The court finds that it is not. Because declaratory relief is "neither strictly
10 equitable nor legal," the classification of a particular request for such relief must hinge on
11 the "nature of the underlying controversy." *Id.* at 1251. Here, the underlying controversy
12 concerns the extent to which Plaintiff is contractually obligated to cover Defendant's future
13 health care costs. *Transamerica* makes clear that such a dispute is legal in nature. In that
14 case, an insurer responded to an insured's threat of a lawsuit over the scope of coverage by
15 seeking a declaratory judgment that a particular clause in the policy did not apply. In part
16 because the insured's contractual claim to benefits, which was the source of the Plaintiff's
17 case, was "clearly a legal one," it was held that the action did not fall within the ambit of
18 section 1332(a)(3)(B)(ii). *Id.* at 1252. The source of Riggs's claim to benefits is similarly
19 contractual and legal in nature. *FMC Medical Plan v. Owens*, 122 F.3d 1258, 1261 (9th Cir.
20 1997), supports this view by suggesting that section 1132(a)(3) is limited exclusively to the
21 "traditional forms of equitable relief" such as "injunction, mandamus, and restitution." *See*
22 *also Sereboff v. Atlantic Med. Servs., Inc.*, 126 S. Ct. 1869, 1873 (2006) (explaining that
23 section 1132(a)(3)(B) authorizes "only those categories of relief that were *typically* available
24 in equity").

25 IT IS THEREFORE ORDERED that the Motion for Reconsideration (Doc. # 18) is
26 DENIED.

27
28

1   IT IS FURTHER ORDERED that the Motion to Dismiss (Doc. # 7) is GRANTED,
2 and the order entered March 29, 2007 (Doc. # 14) is amended to the extent it provides
3 otherwise.
4   IT IS FURTHER ORDERED that the clerk enter judgment dismissing this action for
5 lack of subject matter jurisdiction. The Clerk shall terminate this case.
6   DATED this 27th day of June 2007.

_____
Neil V. Wake
United States District Judge